**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

UNITED STATES OF AMERICA,

   Plaintiff,

   v.                                            CR. NO. 02-393-19 (PG)

DENNYS CRUZ-PEREIRA,

   Defendant.

**OPINION AND ORDER**

    Defendant Dennys Cruz-Pereira, together with 43 other individuals was charged on October 4, 2002 by way of a two-count indictment of conspiracy to distribute narcotics[1]. (Docket No. 2.) Of the 43 defendants, only 6 defendants decided to go to trial. Among the six was defendant Cruz-Pereira. Following a 31-day trial, the jury returned a verdict of guilty as to all defendants on Count One. (See Docket No. 721.) Defendant Cruz-Pereira now moves for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29. (**Docket Nos. 734**). For the following reasons, the Court **DENIES** defendant's requests.

**DISCUSSION**

   **I. Rule 29(c) standard**

    Rule 29(c) states in pertinent part that a defendant may renew a motion for a judgment of acquittal within 7 days after a the jury has returned a guilty verdict, and request that the court set aside the verdict and enter an acquittal. See Fed.R.Crim.P. 29(c).

    The standard of review for Rule 29 motions is the same for both the trial and appellate courts, See U.S. v. Sotomayor, 222 F.Supp.2d 142, 143 (D.P.R. 2002), namely, the court must determine "whether, after assaying all the evidence in the light most amicable to the government, and taking all

---

[1] Count One of the indictment was the conspiracy charge. Count Two, charged two other co-defendants with Narcotics Forfeiture Allegations. Because the appearing defendant was not charged in Count Two, we make reference only to Count One of the indictment.

reasonable inferences in its favor, a rational fact-finder could find, beyond a reasonable doubt, that the prosecution successfully proved the essential elements of the crime." United States v. O'Brien, 14 F.3d 703, 706 (1st Cir.1994). See U.S. v. Cruzado-Laureano, 404 F.3d 470, 480 (1 st Cir. 2005). "The government may satisfy its burden of proof by either direct or circumstantial evidence, or by any combination thereof. Cruzado-Laureano, 404 F.3d at 480 (quoting United States v. Gifford, 17 F.3d 462, 467 (1st Cir. 1994)(internal quotation marks omitted). The Court must "consider all the evidence, direct and circumstantial, and resolve all evidentiary conflicts in favor of the verdict." United States v. Carroll, 105 F.3d 740 (1st Cir.1997). See U.S. v. Marquez Figueroa, 283 F.Supp.2d 596, 598 (D.P.R. 2003); U.S. v. Sotomayor, 222 F.Supp.2d at 143; U.S. v. Lavandier, 14 F.Supp.2d 169, 171 (D.P.R. 1998). The court "need not believe that no verdict other than a guilty verdict could sensibly be reached, but must only satisfy itself that the guilty verdict finds support in a plausible rendition of the record." Cruzado-Laureano, 404 F.3d at 480(quoting United States v. Gomez, 255 F.3d 31, 35 (1st Cir.2001) (citations and internal quotation marks omitted).

**II. Analysis**

Defendant basically argues that there is no evidence linking him to the conspiracy charged. He claims that the evidence showed he was acting alone, and that the only direct evidence to connect him to the conspiracy was the testimony of cooperating witness Abdul Mendoza-Lebron (hereinafter "Abdul") who failed to connect him with the three drug-selling groups of the conspiracy charged: "La Puente Jobos", "La Puente Santa Ana", and "Las Avispas". Defendant posits that pursuant to the applicable drug conspiracy case law, the mere purchases or sales of narcotics is insufficient evidence to prove that an individual joined a drug conspiracy. Furthermore, that a buy-sell transaction is not probative of an agreement to join together to accomplish a criminal objective beyond that already being accomplished by the transaction. Lastly, he argues that mere association with the conspirators or

Crim. No. 02-393(PG)                                                    Page 3

mere presence during activities of the conspiracy will not in and of itself suffice to convict a defendant of conspiracy.

At trial, Puerto Rico Police Officer Ricardo M. Rivera-Colon (hereinafter "Agent Rivera") testified with regards to the investigations of drug points in the Guayama and Salinas municipalities. He stated that the "La Puente" drug point was one of the drug selling points that was identified. (Trial Transcript, August 8, 2003 Docket No.626 at 220.) He stated that at "La Puente" there were two drug points and each had a leader: the Santa Ana quarter drug point, whose leader was defendant Cruz-Pereira and the Miramar Quarter of the Puente Jobo Ward, headed by co-defendant Carlos Escobar a/k/a Carli (hereinafter "Carli"). (Trial Transcript, August 8, 2003 Docket No. 626 at 221.) The government played a tape recording in which, as identified by Agent Ricardo, the voices of confidential informant for the Federal Bureau of Investigation ("FBI") Angel Lugo Villodas (hereinafter "Villodas") and co-defendant Carli could be heard. In the recording, co-defendant Carli, one of the leaders of "La Puente", makes reference to the quality of his cocaine versus the quality of the cocaine sold by defendant Cruz-Pereira. (Trial Transcript, August 8, 2003 Docket No.626 at 275-76; Trial Transcript, August 25, 2003, Docket No. 656 at 1040-41.) Carli also mentioned co-defendant Herbierto Ofray Campos a/k/a "Eric el Tapicero" (hereinafter "Eric el Tapicero") who was widely known in the streets for selling cocaine or "perico", as it is also commonly known. (Id., at 274-75.) Co-defendant Eric el Tapicero was the leader of the La Copa Rota a/k/a La Copa Deportiva drug point. (Id., at 225-226.) He also owned an upholstery shop in Guayama where he would sell drugs as well. (Id., at 227-288.) In the recording, Carli also mentioned that his crack was better than co-defendant Wilson Mendoza Vazquez' (hereinafter "Wilson") crack. (Id., at 273.) Wilson Mendoza is Abdul's cousin and worked at El Mosquito Drug Point. Agent Rivera testified that cooperating witness Abdul made several buys of eights of cocaine at Eric el Tapicero's shop to then cook it in order to supply crack to different drug points in

Crim. No. 02-393(PG)                                                Page 4

Guayama.

Abdul testified that he and Wilson started dealing crack together at the Las Ruinas drug point in Guayama but later on Abdul began working on his own. (Trial Transcript, 8/12/03, Docket No. 632 at 517.) From Las Ruinas, both Abdul and Wilson sold crack to other drug points in Guayama. (Id.) He testified that from 1993 to around 1999, he sold drugs in the La Puente Jobos area and that he had several buyers among which were co-defendant Carli and Cruz-Pereira. (Id., at 519.) Abdul testified that when Wilson did not have crack he would be the one to supply defendant Cruz-Pereira. Abdul further indicated that in a week he would sell half an eighth or an eighth of crack to Cruz-Pereira and Carli. Both Carli and Cruz-Pereira who would in turn sell an eighth to Abdul.

Another witness who testified about Cruz-Pereira's drug dealings was informant Villodas. A tape recording was played at trial of a conversation between informant Villodas and defendant Cruz-Pereira. That conversation took place at the Barriada Santa Ana, in the back of defendant Cruz-Pereira's home. Informant Villodas asked defendant Cruz-Pereira for capsules of crack, specifically 30 or 50 and defendant informed him it would be $200 for 50 capsules (2.88 grams of "crack" cocaine). Cruz-Pereria told Villodas that he did not have them at hand, and that he should wait for he would go get them somewhere else. (Trail Transcript, 8/25/03, Docket No. 656 at 102-21.) Villodas indicated that Cruz-Pereira left and came back around forty minutes later and gave him a pack of vials of crack. It could be heard in the recording when the transaction was taking place and the informant was counting the money. (Trial Transcript, 8/8/2003, Docket No. 626 at 279-280; Trail Transcript, 8/25/03, Docket No. 656 at 102-21.)

Lastly, Puerto Rico Police undercover agent Edwin Rosas-Ferrer ("Rosas"), who worked undercover at Guayama, testified that he bought drugs from defendant Cruz-Periera at the Puentes Jobos section on two different occasions. Officer Rosas testified that on November 17, 1998, he asked a man

Crim. No. 02-393(PG)                                                    Page 5

named Christopher where he could get drugs and that he took him to Cruz-Pereira's house. There Officer Rosas bought one gram of coke for $40.00 from Cruz-Pereira. (Trail Transcript, September 2, 2003, Docket No. 669 at 1267-68.) Officer Rosas described the details of the transaction. He was to go to La Ponderosa, a bar which belonged to Cruz-Periera, where the latter would give him the gram of coke after getting it from his cousin's house given that the cousin had taken the scale defendant Cruz-Pereira used to weigh the controlled substances with. Officer Rosas went to La Ponderosa and Cruz-Pereira arrived about 45 minutes later. Officer Rosas approached Cruz-Pereira's vehicle and the latter gave him a bag with the cocaine. They went inside the La Ponderosa and there he gave Christopher $40.00 for him to give Cruz-Pereira. (Id., at 1269-1276.) Officer Rosas further testified that on December 3, 1998, while working undercover in Guayama, he again bought drugs from Cruz-Pereira. This time, he went directly to La Ponderosa but it was closed. He drove around and spotted Cruz-Pereria at a gas station and signaled him to approach him. He asked him for five grams of cocaine. They agreed on a price and Cruz-Pereria told him to pass by La Ponderosa later in the afternoon. At around 3:30 p.m., Officer Rosas went to La Ponderosa and defendant told him to wait for he would go get his "things". (Id., at 1279.) Cruz-Pereira returned with the drugs, 4.89 grams of cocaine, and Officer Rosas gave him $150.00.

   The challenged conviction centers around a charge of conspiracy to possess and distribute narcotic controlled substances. To prove a drug conspiracy charge under 21 U.S.C. § 846, the government is obliged to show beyond a reasonable doubt that a conspiracy existed and that a particular defendant agreed to participate in it, intending to commit the underlying substantive offense. " U.S. v. Femia, 57 F.3d 43, 47 (1st Cir. 1995); See U.S. v. Sepulveda, 15 F.3d 1161, 1173 (1st Cir. 1993). Agreement and intent sufficient to establish conspiracy need not be proven by direct evidence, but may be inferred circumstantially. U.S. v. Alemany Rivera, 781 F.2d 229, 234

Crim. No. 02-393(PG)                                                    Page 6

(1st Cir. 1985). See U.S. v. Guerra-Garcia, 336 F.3d 19, 23 (1st Cir. 2003)[2]. Furthermore, the statute, 21 U.S.C. § 846, requires no overt act in furtherance of the conspiracy. See U.S. v. Nelson-Rodriguez, 319 F.3d 12, 28 (1st Cir. 2003). Thus, the government need only proffer circumstantial evidence, including inferences from surrounding circumstances, such as acts committed by the defendant that furthered the conspiracy's purposes." U.S. v. Gomez-Pabon, 911 F.2d 847, 852 (1st Cir. 1990). Upon reviewing the record, pursuant the applicable standard, the Court finds that the quantum of evidence presented against the defendant suffices to sustain the conviction.

The evidence at trial clearly linked defendant Cruz-Pereira to the "La Puente" drug point and showed that he sold and bought drug from the "La Puente" area in Guayama. The evidence showed that he bought drugs from Abdul and co-defendant Wilson who worked at the Mosquito Drug Point and was also charged in the indictment as a co-conspirator. (See Docket No. 2 at 3 & 8.) The evidence further showed that the "La Puente" drug point had two leaders, defendant Cruz-Pereira and co-defendant Carli. Carli also bought drugs from Abdul and co-defendant Wilson. From the recording played of the conversation between Villodas and Carli, it was shown that Carli had knowledge of Cruz-Pereira's dealings by his comments regarding the quality of his drugs vis-a-vis Cruz-Pereira's drugs. It can be reasonably assumed that defendant Cruz-Pereira also had knowledge of co-defendant Carli's drug sales and distribution. Carli also commented on the quality of his drugs vis-a-vis his and Cruz-Pereira's supplier's--i.e. co-defendant Wilson, who was associated with the Las Avispas gang. (Trial Transcript, August 14, 2005, Docket No. 642 at 681.) Lastly, in that recording, Carli mentioned co-defendant Eric el Tapicero, also included in the indictment as a co-conspirator. The evidence

---

[2] See also Nelson-Rodriguez, 319 F.3d at 28; U.S. v. Marrero-Ortiz, 160 F.3d 768 (1st Cir. 1998); Sepulveda, 15 F.3d 1161; U.S. v. Tejeda, 974 F.2d 210 (1st Cir. 1992); U.S. v. Benavente Gomez, 921 F.2d 378 (1st Cir. 1990); U.S. v. Paradis, 802 F.2d 553, 559 (1st Cir. 1986); Alemany, 781 F.2d at 234; U.S. v. Drougas, 748 F.2d 8 (1st Cir. 1984).

Crim. No. 02-393(PG)                                                   Page 7

at trial showed, that Abdul made several buys of cocaine at Eric el Tapicero's shop to then cook it in order to supply crack to different drug points in Guayama. It can be reasonably assumed that the cocaine Abdul bought from co-defendant Eric el Tapicero, which he cooked to supply crack to drug points in Guayama, he shared with co-defendant Wilson, his partner.  The evidence showed that co-defendant Wilson and Abdul supplied drugs to both Carli and defendant Cruz-Pereira.

Although mere association with conspirators is insufficient to establish participation in a conspiracy, here, the jury may well have inferred an agreement circumstantially by the evidence of the overlap of participants, Carli, Wilson, Eric el Tapicero, defendant Cruz-Pereira among others, as well as the common purpose of selling illicit drugs. See Guerra-Garcia, 336 F.3d at 23. See also Nelson-Rodriguez, 319 F.3d at 28. Glasser v. United States, 315 U.S. 60, 80 (1942). ("[A] common purpose and plan may be inferred from a development and collocation of circumstances.") Furthermore, Cruz-Pereira's intent to commit the substantive offense --posses with intent to distribute and distribute narcotic controlled substances-- is unquestionable. There is evidence of at least three drug sale transactions, two of which were to Officer Rosas, and the last one, with the knowledge that he intended to re-sell it. (See Trail Transcript, September 2, 2003, Docket No. 669 at 1274-76.)

Given the "secretive nature of the crime, it is recognized that the agreement may be express or tacit, [which] may be proven by circumstantial as well as express evidence." U.S. v. Rivera-Santiago, 872 F.2d 1073, 1079 (1st Cir. 1989).Sepulveda, 15 F.3d at 1173 ("there are no particular formalities that attend this showing: the agreement may be express or tacit and may be proved by direct or circumstantial evidence"). It is well-settled that a conspirator need not "know the other participants in the conspiracy," U.S. v. Rivera-Ruiz, 244 F.3d 263, 268 (1st Cir. 2001); and the government "need not prove that the defendant knew all the details or all the members of the conspiracy" United States v. Nueva, 979 F.2d 880, 884 (1st Cir.1992), or that

Crim. No. 02-393(PG)                                                  Page 8

a the "defendant took part in all aspects of the conspiracy." <u>Sepulveda</u>, 15 F.3d at 1173 (citations omitted). Ultimately, a "conspiracy is proved if the evidence sufficiently shows that all of the alleged conspirators directed their efforts towards the accomplishment of a common goal or overall plan." <u>Rivera-Santiago</u>, 872 F.2d at 1079 (quoting <u>United States v. Drougas</u>, 748 F.2d 8, 17 (1 st Cir. 1984)(internal quotation marks omitted). In other words, for defendant Cruz-Pereira to join the conspiracy, "it was necessary that he agree, whether by words or action, to join with others in the enterprise-here, to possess drugs for distribution." <u>United States v. Innamorati</u>, 996 F.2d 456, 469-70 (1st Cir.1993); <u>See</u> <u>U.S. v. Garcia-Torres</u>, 280 F.3d 1, 4 (1st Cir. 2002). The Court finds, based on the totality of the evidence, <u>U.S. v. Rivera-Ruiz</u>, 244 F.3d 263, 268 (1st Cir. 2001), that a rational fact-finder could find, beyond a reasonable doubt, that defendant Cruz-Pereira was involved in the conspiracy charged[3]. <u>See</u> U.S. v. Rivera-Santiago 872 F.2d 1073, 1079 (1 st Cir. 1989)("[t]he fact that he participated in one retail link of the distribution chain, knowing that it extended beyond his individual role, was sufficient")(<u>citing</u> <u>United States v. Moosey</u>, 735 F.2d 633, 635-36 (1st Cir.1984)).

## **CONCLUSION**

WHEREFORE, for the anteceding reasons, the Court DENIES defendant's Motion. (Docket No. 733.)

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, November 16, 2005.

                                             S/JUAN M. PEREZ-GIMENEZ
                                             U. S. DISTRICT JUDGE

---

[3] "Neither juries nor judges are required to divorce themselves of common sense, but rather should apply to facts which they find proven such reasonable inferences as are justified in the light of their experience as to the natural inclinations of human beings." <u>U.S. v. Tejeda</u>, 974 F.2d 210, 213 (1st Cir. 1992)(citations omitted).